| 81 | 495 |
| 88 | 673 |
| 81 | 495 |
| 89 | 459 |

### Richmond.

## N. & W. R. R. Co. & als. v. Smoot.

### March 11th, 1886.

1. Chancery Practice—*Misjoinder—Community of interests.*—Two or more parties having distinct causes of action against the same defendant, cannot join in one suit to enforce their rights. To enable plaintiffs to join in one suit, they must have a community of interest; such as to establish a street, or to have obstructions in an existing street removed; or, as tax-payers, to restrain municipal corporations and their officers from transcending their powers in a way injurious to tax-payers. *Roper* v. *Mc Whorter*, 77 Va. 214.

2. Idem—*Railroads—Injunctions.*—Conceding that plaintiffs can establish that they are entitled to compensation; that the injury they complain of is such that it cannot be adequately compensated in damages, and that it is therefore proper for a court of equity to grant the relief to which they may appear to be entitled; yet it is not proper for the court, pending the enquiry into their right to compensation, and before its assessment by law, to interfere by injunction, or otherwise, to stay the proceedings of the defendant railroad company, in laying or using the tracks on the land in respect to which the injury is alleged to be done or threatened, unless it be "*manifest*" that said company is transcending its authority, *and* that the interposition of the court is necessary to prevent injury that cannot be adequately compensated in damages. Code 1873, ch. 56, ⸙13. *Supervisors* v. *Gorrell*, 20 Gratt. p. 514.

Appeal from decrees of circuit court of Roanoke county, rendered October 13th, 1883, and April 7th, 1884, respectively, in a chancery cause in said court, wherein the Norfolk & Western Railroad Company, and the Shenandoah Valley Railroad Company and others were defendants, and John T. Smoot, Josiah

Friend, John H. Davis, Charles A. Woolford, and P. P. Wood-
ruff, were complainants. The defendants demurred to the bill
and also answered it, and moved to dissolve the injunction
which had been awarded on the motion of the complainants.
But the circuit court overruled the demurrer, and overruled
the motion to dissolve the injunction—perpetuated it—until
the Norfolk & Western Railroad Company should compensate
the plaintiffs, respectively, for any damage to their lots, occa-
sioned by the laying of the tracks in the bill complained of.
From this decree the defendant companies obtained an appeal
and *supersedeas* from one of the judges of this court. Argued
at Wytheville, but decided at Richmond.

Opinion states the case.

*Wm. J. Robertson* and *Watts & Robertson*, for the appellants.

*Penn & Cocke*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

A transcript of the record filed with their petition discloses
that in the spring of the year 1881 the council of the town of
Roanoke (which was then known by the name of Big Lick)
agreed to donate to the Shenandoah Valley Railroad Company
an acre of land within the limits of said town, provided said
company would construct its line of road to that point, the
expectation then being that the land to be so donated would
be used by said company for depot purposes. The road was
constructed to said town, but before its completion it was
ascertained that it would be more advantageous to the com-
pany to take the land in a strip alongside of the road-bed of
the Norfolk and Western Railroad Company, with which it
connected at that point, so as to obtain space for that company

to lay additional tracks to accommodate the business of both companies; and it was then understood and agreed between the town authorities and the Shenandoah Valley Railroad Company that the acre of land to be donated should consist of a certain strip of land lying alongside of the road-bed of the Norfolk and Western Railroad at the place where it was desired that the additional tracks should be laid. The town authorities accordingly agreed with Mr. John Trout, the owner of the said strip of land, to purchase the same from him at a specified price, so as to be able to comply with their agreement to convey it to the Shenandoah Valley Railroad Company. These agreements, which do not appear to have been reduced to writing, were made in the early part of the year 1882; but the said additional tracks not being needed until the completion of the Shenandoah Valley Railroad in June, 1882, no deeds were executed for the purpose of carrying them into effect during the lifetime of the said Trout, who died in April, 1882. The said Trout had, however, before his death caused a surveyor to lay off the strip of land which was to be conveyed by him to the town of Roanoke, and by the town to the Shenandoah Valley Railroad Company; and also to lay off lots coming up to the line of the strip so laid off; which lots were subsequently sold by him to the plaintiff in this suit, or to parties under whom they claim. This strip of land extended to a street called "Railroad Avenue," which had been opened on the land of the Roanoke Land and Improvement Company, so that if left open it would appear to be a prolongation of that street; and it seems to have been the general impression among the citizens of the town (not derived, however, from either of the railroad companies, or from any officer or agent of either of them) that it was the intention of said railroad companies to dedicate the said strip of land to street purposes, so as to make it a part of the street then known as Rail-

road Avenue.    Said Trout seems to have shared this impres-
sion, and in making sale of the lots laid off adjacent to said
strip as aforesaid, represented to the purchasers that they fronted
on Railroad Avenue, which he said to some of them was fifty
feet in width.    This strip of land was thrown open about the
time of Trout's death, in April, 1882, and from that time
forth all persons who chose passed along it; but it was not
graded or worked upon as a street or a road.    About the time
of the completion of the Shenandoah Valley Railroad to the
town of Roanoke—to wit, on the 7th of July, 1882, the town
council appointed a committee to see Mr. Coe, the engineer of
the Norfolk and Western Railroad Company, and obtain infor-
mation from him as to the intention of the company in regard
to laying tracks on this strip of land, described in the resolu-
tion appointing the committee on the street known as Rail-
road Avenue; and on the 14th of July, 1882, the committee
reported that Mr. Coe had stated to them that it was not the
intention of the railroad company to utilize the whole of the
street south of the Norfolk and Western Railroad, as reported;
but that they would like to have the use of a portion of the
street for track purposes; that their nearest track would not
run closer, at any point, than within twenty-five feet of the
south side of said street, and that they would box the track
nearest to the south side of said street; that Mr. Coe thought
there would be no objection to the Trout heirs deeding this
strip of land to the corporation of Roanoke for street pur-
poses; and that the railroad company could then make a con-
tract with the town authorities for the use of as much of the
street as they might need for track purposes.    To this report
Mr. Coe appended a statement in writing to the effect that *he
thought* that the arrangement suggested in it would be satis-
factory to the Norfolk and Western Railroad Company, and
that he would advise its acceptance.    On the 15th of August,

1882, a petition was presented to the town council by the owners of property adjacent to the strip of land praying that the council would, by injunction or otherwise, prevent the Norfolk and Western Railroad Company from using the street of Railroad Avenue for track purposes; upon consideration of which the council adopted a resolution declaring that, in their opinion, it would not be to the interest of the town to enjoin or otherwise restrain the Norfolk and Western Railroad Company from using a portion of Railroad Avenue, and ordering that it be allowed to use the same, provided their nearest railroad be within twenty-nine feet of the south side of said avenue, and that the company should box such tracks as might be laid on said avenue, and grade that portion of the street between the rails and the south side of said avenue.

On the 16th September, 1882, Mr. Flickwir, an assistant engineer on the Norfolk and Western Railroad Company, and also a member of the town council, addressed the council, on behalf of the said company, and asked that the company be given more positive right to the land given them on Railroad Avenue for track purposes; and urged that it be done at once. Whereupon, it being suggested that the town had not its deed to the property from the Trout heirs, it was ordered that it be done (obtained) at once. And Mr. H. S. Trout (one of the heirs of John Trout, deceased,) informing the council that the deed had been drawn, and only awaited one or two signatures, a committee was appointed to draw the contract between the city and the railroad company, and to embody the same in a deed to be made to the aforesaid railroad company. A deed was, accordingly, a few days afterwards, obtained from the Trout heirs to the town, conveying the said strip of land, which John Trout in his lifetime had agreed to sell to the town, to be conveyed by it to the railroad company, in fulfillment of its original agreement to donate to it an acre of land

in the limits of the said town. Upon the delivery of this deed to the town, a deed was made and delivered by the said town, September 20th, 1882, conveying, with general warranty of title, in fee simple, to the Shenandoah Valley Railroad Company the portion of the strip of land thus conveyed to it, upon which, under the resolution of August 15th, 1882, of the council, the Norfolk and Western Railroad Company had been authorized to lay its tracks—the said conveyance being expressed to be, in consideration that the Shenandoah Valley Railroad Company should grade, on a level with the tracks, the remainder of the land between the tracks and the building line; and further, that this donation should be received by said company in lieu of any previous donation of land by the town; and for the further consideration of one dollar, &c.

The Norfolk and Western Railroad Company, proceeding to lay its tracks upon the strip of land conveyed by this deed to the Shenandoah Valley Railroad Company under and pursuant to its agreement with the latter company, was inhibited from so doing by process of injunction granted on the —— day of October, 1882, by the judge of the circuit court of Roanoke county, upon a bill filed by the plaintiffs in this suit against the Norfolk and Western Railroad Company as the only defendant, the said bill alleging that the plaintiffs, or their grantors, had respectively purchased lots from John Trout, who, before he sold the same, had them laid off as town lots, fronting upon Railroad Avenue, which had, also, been surveyed and laid off under his direction as a street of the width of fifty feet; and was not only so represented by said John Trout to said purchasers from him, but was, in fact, dedicated by him to and accepted by the town of Roanoke as a street, being given by him to the said town in order to make the said lots more salable. It was further alleged in said bill that the plaintiffs, or their grantors, would not have purchased the said lots at the

prices paid for them but for the fact that they were separated from the railroad by this street fifty feet in width. That after they had built upon and improved said lots the council of the town of Roanoke had, upon the application of the Norfolk and Western Railroad Company, granted that company permission to occupy a portion of said street immediately in front of their said lots, with its tracks; and that said company was then engaged in laying the same along the said street, by and with the consent of the said town, without making compensation to the owners of said lots, respectively, or having it ascertained as required by the Act of 15th January, 1875 (Acts 1874–'75, page 35). That the injury thus sustained by the plaintiffs, respectively, was very great, and such as could not be adequately compensated in damages, and that the railroad company, in thus laying said tracks, was exceeding its authority, and acting in direct contravention of law.

On 20th October, 1882, responsive to the prayer of this bill, the "injunction was granted to operate and be in force until the defendant, the Norfolk and Western Railroad Company, shall make compensation to the complainants for any damage or impairment of the value of their lots, occasioned by the making of said switch or siding on the street in the bill described; said compensation to be ascertained in the manner prescribed by law for the assessment of land damages against railroad companies." To this injunction bill the defendant company demurred, assigning as ground of demurrer, that the damage alleged to be done to each of the plaintiffs was separate and distinct from the damage alleged to be done to the others, and that, therefore, the plaintiffs having, each of them, a distinct and separate and independent cause of action, should not have joined in one bill.

On the 14th October, 1883, this demurrer was overruled by the court, and the defendant required to answer the bill. The

answer being filed, the defendant moved to dissolve the injunction; and the cause came on to be heard upon the bill, the answer, with replication thereto, the exhibits filed and the numerous depositions taken and filed in the case both by plaintiffs and defendant; whereupon the court entered an order making the cause a vacation case. It did not, however, decide it in vacation, and took no further action in it until the next term of the court, after an amended bill had been filed by the plaintiffs, making the Shenandoah Valley Railroad Company and the town of Roanoke and the heirs of John Trout, parties defendant.

It being agreed that the answer filed by the Norfolk and Western Railroad Company should be taken and considered by the court, as the answer of the Shenandoah Valley Railroad Company also, and the bills having been taken for confessed as to the other defendants, the court, on the 7th day of April, 1884, rendered a decree perpetuating the injunction unless and until the Norfolk and Western Railroad Company should make to the plaintiffs, respectively, compensation for any damage to or impairment of the value of their lots occasioned by the laying of the tracks, in the bill complained of; and inhibiting and restraining it from the use and occupation of said street ·by its tracks until said damages should be assessed and paid.

We are of opinion that the circuit court erred in overruling the demurrer to the original bill.

There is, in this case, no such community of interest between the plaintiffs as would enable them to join in one bill. This suit is not brought to have the strip of land on which the tracks were laid, or about to be laid, established as a street; nor to have obstructions in an existing street removed; nor for any object in which the public is interested, or in which the plaintiffs have a joint or common interest—no one of them

having any concern with the relief, which under the prayer and purpose of the bill, can be extended to one or more of the others. The object of the bill, and the prayer of the bill, are to compel the defendant company to make compensation to each of the plaintiffs, severally, for the alleged damage to or impairment of the value of a lot of land belonging, specifically, to himself, in which none of his co-complainants have any interest whatever; said compensation to be ascertained in the manner provided by law for the ascertainment of land damages—each claim being distinct from and independent of the others. This case does not come within the principle or authority of the cases—*Roper* v. *McWhorter* 77 Va. (2 Hansbrough), 214; *Blanton, Commissioner,* v. *Southern Fertilizer Company* 77 Va. (2 Hansbrough), 335. These were cases of pure bills of injunction to restrain public officials, or factors, from maladministrative exercise of functions injurious to the general public. This case at bar is a proceeding by injunction, to compel the ascertainment and payment of alleged damage to individual pieces of property—the same to be assessed and ascertained in the manner prescribed by law for the assessment of land damages against railroad companies. This is the prayer of the bill and object of the suit; and this is the language of the injunction order granted, and of the decree of the court. The defendant company hold a fee simple deed with general warranty of title to the strip of land in question, made to them by the town authorities of Roanoke before the institution of this suit; and so long as this deed from the town of Roanoke to the defendant company stands, the complainants have no ground for claiming that the company has occupied a street of the town, and they are entitled to damages for the injury done to their land by reason thereof. The title to the land cannot be settled by these proceedings.

The circuit court erred in refusing to dissolve the injunction at the October term, 1883.

Even conceding that the plaintiffs are entitled to compensation, and that the injury of which they complain is such that it cannot be " adequately compensated in damages," and it is therefore proper for a court of equity to grant the relief to which they may appear to be entitled ; yet, it was not proper for the court, pending the inquiry into their right to compensation and before its ascertainment and assessment by law, to interpose by injunction or otherwise to stay the proceedings of the company in laying or using the tracks in question.   The statute, founded upon plain considerations of public policy, expressly prohibits such stay of proceedings, unless it be manifest that the company is transcending its authority, and that the interposition of the court is necessary to prevent injury that cannot be adequately compensated in damages.   Section 13 of chapter 56 Code of 1873 provides that: " No order shall be made nor any injunction awarded by any court or judge to stay proceedings of any railroad company in the prosecution of their work, unless it be manifest that they, their officers, agents or servants, are transcending their authority, *and* that the interposition of the court is necessary to prevent injury that cannot be adequately compensated in damages." Both these conditions must concur.   *See* :   *Tuckahoe Canal Company* v. *Tuckahoe Railroad Company*, 11 Leigh, 42 ; *James River and Kanawha Company* v. *Anderson*, &c., 12 Leigh, 278 ; *Supervisors* of *Culpeper* v. *Gorrell*, &c., 20 Gratt 514.   The deed, conveying this land upon which the tracks were laid and being laid by the Norfolk and Western Railroad Company, with the consent and for the use and benefit of the Shenandoah Valley Railroad Company, was executed by the said town of Roanoke subsequently to its alleged acceptance of the land for and as a street in said town.   No effort is made by the plaintiffs to set this deed aside, nor in any manner to question its validity ; it, therefore, could not be manifest that the

Norfolk and Western Railroad Company, in laying its tracks upon this land, was transcending its authority, or that the Shenandoah Valley Railroad Company was transcending its authority in permitting them to be laid upon it. And the very prayer of the bill and the decree of the court expressly say that the injury, if any, can be, and must be, adequately compensated in damages.

The decrees complained of are erroneous and must be reversed and annulled, and the cause remanded to the circuit court of Roanoke county with directions to dissolve the injunction granted, and to sustain the demurrer, and to dismiss the bill of complaint, without prejudice to the plaintiffs in the court below to pursue their proper remedy.

DECREES REVERSED.