HOMER M. HEAVNER *et al. v.* STATE ROAD COMMISSION *et al.*

(No. 8495)

Submitted April 13, 1937. Decided May 11, 1937.

*Harvey W. Harmer,* for relators.

*Powell & Clifford, Clarence W. Meadows,* Attorney General, and *Forrest B. Poling,* Assistant Attorney General, for respondents.

Fox, Judge:

The petitioners, Homer M. Heavner and W. Frank Stout, seek a writ of mandamus to compel the State Road Commission to open and maintain a section of state highway Route 20, as originally established and located beginning at the intersection of Haymond Avenue with said route, near the corporate limits of the City of Clarksburg, extending in the direction of property owned by petitioners. The following statement of facts made up from the record seems necessary to develop the points of law at issue.

State Route 20 was designated as such by an order of the State Road Commission made on the 4th day of August, 1921, and was maintained as a primary state highway, and on its original location, from that date to the time when the relocation of parts of said route was made as hereinafter defined. Prior to such relocation, the petitioners became the owners of property abutting on said route, the petitioner, Stout, owning a house and small lot, and Heavner, a tract of seven acres of land, which, in 1928, he subdivided into forty-eight town lots, of which fifteen abutted on said route, the others being located on proposed streets leading into the same. At the time of the relocation, none of these lots had been sold, and the tract as a whole is now being used as meadow land.

Route 20, as originally located and designated, extends from Clarksburg south, passes the intersection of Haymond Avenue, near the city limits, and then along and above the street car line leading to Nutter's Fort, across a street car line, and in front of the property of petitioners, then under a trestle over which the car line passes, near a suburban community called Arbutus Park, and from that point, continues in the direction of Buckhannon. The location, grade and alignment of the route, in that vicinity, being, in the opinion of the Road Commissioner, unsatisfactory, it was decided to relocate that part of the same beginning near the intersection of Haymond Avenue by passing around the hill above the car line, thereby eliminating both the grade

and undergrade car line crossings, and correcting and improving both the grade and alignment; the entire project, some two or three miles in length, and including grading and the construction of a modern highway thereon, involved an expenditure of more than one hundred thousand dollars. The original Route 20 was not affected except for a distance of about 300 feet from a point near Haymond Avenue where the change began. At this point, the new road was constructed on a grade some six feet higher than the original route, the road bed was widened, guard-rails were installed, and access to petitioners' property from the Clarksburg end of the new location was destroyed. Access to their property by way of the new location was provided by what is called a cut-off which leads from the new location, at a point 2290 feet south of Haymond Avenue, and extends a distance of 632 feet to old Route 20, and by said route, 692 feet to the center of the Heavner property, and some 370 feet farther to the property of Stout. From Haymond Avenue to the nearest point on the Heavner property by the original route, the distance is 903 feet, and to the center thereof, 1273 feet; so that, in traveling to or from Clarksburg by the new route, the distance is increased 2341 feet beyond that which it would be necessary to travel were the obstruction near Haymond Avenue removed and the road opened for travel. The record shows that the new route is as good, if not better, than the old, and the most serious objection made thereto is the additional distance required to be traveled in reaching the property of the petitioners. Under this statement of facts, petitioners say that they are entitled to have Route 20 opened for travel on its original location throughout, and seek to attain this end by the writ prayed for.

The respondents justify their action in closing said route at the point mentioned under powers vested in the Road Commissioner by Section 4, Article 4, Chapter 40, Acts of the Legislature, First Extraordinary Session 1933; they also rely on the proposition that their action, being a matter involving the exercise of discretion

on their part, cannot be controlled by mandamus; and the right to control the action of the State Road Commission, or the Road Commissioner, as such, is also questioned, on the ground that being agencies of the State they cannot, in their official capacity, be made defendants in any suit or proceeding.

Wide power is vested in the Road Commissioner by the statute above referred to. Power is given him to

"(1) Locate and relocate new primary or secondary roads; and upon the petition of any interested party or upon his own initiative create, extend or establish any new road that shall be necessary * * *;

"(2) Upon petition and hearing, or after due investigation, upon his own initiative, discontinue any road no longer necessary;

"(3) Construct, reconstruct, repair and maintain the state roads."

This power was granted through the enactment of a comprehensive statute covering the location, construction, maintenance and control of the entire road system of the state, including main highways and roads formerly under the control of the county courts; and the powers thus granted must be taken to supersede all statutory provisions affecting the roads of the state existing prior thereto. It was under this power that the Road Commissioner assumed to act in relocating Route 20, and in closing that part of the old route which is the subject of attack in this proceeding. The power is broad and sweeping, and would seem to be beyond the control of the courts so long as action thereunder is not arbitrary, capricious or fraudulent, and there is no such charge herein; and while the action of the Road Commissioner in closing this road leaves something to be desired, with respect to the manner in which it was carried out, being, so far as the record discloses, without notice or consultation with the property owners affected thereby, yet under the statute quoted, his exercise of the power so clearly vested in him must be upheld. The legislature having granted this power in the broadest possible terms,

courts are not at liberty to interfere with the exercise of the same by those entrusted with its execution, except in cases where capricious, arbitrary or fraudulent conduct is involved.

While neither the state, nor agencies created by it for governmental purpose, may be sued without its consent, yet the right to control the official acts of an individual, or a number of individuals composing boards and commissions, created by the state, is within the power of the courts, when they seek to exceed their powers or fail to perform plain and mandatory duties prescribed by law. *State* v. *Shawkey,* 80 W. Va. 638, 93 S. E. 759; *State* v. *Fortney,* 93 W. Va. 292, 116 S. E. 753; *State* v. *Bond,* 94 W. Va. 255, 118 S. E. 276; *State ex rel. Yost* v. *State Road Commission,* 96 W. Va. 184, 122 S. E. 527; *Draper* v. *Anderson,* 102 W. Va. 633, 135 S. E. 837; *Hardy* v. *Road Commissioner,* decided at this term, 118 W. Va. 440, 190 S. E. 47. True, where discretion to do or not to do a particular act is vested in a board, commission or individual official, the exercise of such discretion may not be controlled by mandamus. *State* v. *Lane,* 89 W. Va. 744, 110 S. E. 180; *Reynolds* v. *Road Commissioner,* 111 W. Va. 398, 162 S. E. 319; *Walden* v. *Compensation Com'r.,* 113 W. Va. 307, 167 S. E. 743. In this case, while we hold that, subject to exceptions noted, the Road Commission, under the statute quoted, had full and complete authority to make the change in the road and to discontinue parts of the old route, still if such power be considered as less than complete, and such as might be controlled for abuse of discretion, we think that, under the record as presented here, considering all of the circumstances disclosed thereby, the Road Commissioner did not abuse any discretion which may have been vested in him. The securing of the better grade and alignment, the elimination of the two crossings, so far as relates to through traffic, the removal of traffic hazards, fully warranted the change, which leaves open only the question of rights of the petitioners growing out of such change.

The gravamen of the petitioners' complaint is that the

closing of old Route 20 at the point near Haymond Avenue substantially damages the market value of their property by reason of inconvenience occasioned by being required to travel the new route, and the cut-off, in order to reach their property, adding almost one-half mile to the distance to be traveled, in going to and from Clarksburg. We do not think a claim of damage is, alone, sufficient to justify use of the writ of mandamus to avoid the same. If the petitioners have been damaged, and their damages are such as may be recoverable under the provisions of our constitution and statutes, providing for compensation where private property is taken or damaged for a public use, we have held in *Hardy* v. *Road Commissioner*, decided this term, that, in a proper case, the Road Commissioner will be required to institute condemnation proceedings for the ascertainment of such damage; but in referring to such right of a property owner, we do not mean to hold that this is a case in which plaintiff is entitled to damage. The cases of *Dick* v. *City of Hinton*, 109 W. Va. 708, 156 S. E. 81, *Richmond* v. *City of Hinton*, 117 W. Va. 223, 185 S. E. 411, and *City of Lynchburg* v. *Peters*, 156 Va. 40, 157 S. E. 769, strongly support the theory that damage may not be recovered by owners of property, not abutting on the street or highway, but only affecting access thereto, where reasonable and adequate access is provided. Certain it is that the alleged damage to the petitioners' property, if asserted before the relocation of Route 20, and the construction of the new road thereon, would not have justified an injunction against such relocation, or the construction of the new road thereon. *Spencer* v. *Railroad Co.*, 23 W. Va. 406; *Arbenz* v. *Wheeling & R. Railway Co.*, 33 W. Va. 1, 10 S. E. 14, 5 L. R. A. 371; *Yates* v. *Town of West Grafton*, 34 W. Va. 783, 12 S. E. 1071; *Ward* v. *Ohio River Railway Co.*, 35 W. Va. 481, 14 S. E. 142; *Bartlett* v. *Grasselli Chemical Co.*, 92 W. Va. 445, 115 S. E. 451, 27 A. L. R. 54; *Dick* v. *City of Hinton, supra.* That being true, it seems illogical to say that mandamus can be invoked to correct a situation, the creation of which could not have been enjoined in the first instance.

Here we have a case, where in the exercise of a power vested in the Road Commissioner, expressly conferred by statute, a portion of Route 20 has been relocated, and in the construction of the highway on the new location, the intersection of the old highway with the new at the point near Haymond Avenue is rendered difficult and expensive, if not wholly impracticable, by reason of the elevation of the new road above the old location, calling for an excessive grade, and which is rendered more objectionable, from a traffic standpoint, by the existence of the grade crossing attempted to be avoided. We have no difficulty in holding that in discontinuing this part of Route 20, there was no abuse of power, such as could have been controlled either by injunction prior to the change, or by process of mandamus at this time, requiring the restoration of the road on its original location, in view of the fact that all access to petitioners' property has not been destroyed, but that a reasonably safe and adequate access has been provided. In the changes which from time to time may be made in the location of streets and highways, public officials are not called upon to provide more than one reasonable access to property affected by such change, and especially is this true where additional access can only be provided at unreasonable expense, through the use of excess grades, and creation of new and serious traffic hazards. It must be borne in mind that every owner of private property holds the same subject to public rights and interests. Where private property is taken or damaged for public use, compensation must be paid, but, in the very nature of things, this right to compensation cannot be extended beyond reasonable limits. In maintaining old Route 20 along the property of petitioners, providing reasonable access to the new location of such route by way of a cut-off, we think the state has met its obligation and that petitioners have no warrant to complain. By the relocation of the road here involved, difficult grades, an under-grade crossing and a crossing at grade are, as to through traffic, eliminated at a heavy cost, and we are not disposed to minimize the benefits

resulting therefrom to the public by requiring the re-establishment of the old road unless required to do so by some compelling necessity to protect private interests. We do not think this case calls for any such action.

Petitioners rely strongly on the case of *Yost* v. *State Road Commission, supra*. This was a case arising under the statute as it existed prior to 1933. The action there taken seemed to be necessary to require the maintenance of a road through a thickly populated section, and where both a state and county disclaimed any obligations to maintain the road. Having taken over the route as a part of the state highway system, and not having legally discontinued the same, and the county court refusing to maintain the road, this court held that the state was under obligation to do so. In the case at bar, under express statutory authority, a new location is established and a road constructed and maintained thereon, and access provided thereto in the interests of property owners of the vicinity through which it passes. The two situations are clearly distinguishable.

The writ prayed for is refused.

*Writ refused.*